## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| AMERICAN PETROLEUM INSTITUTE., | ) | |
| 1220 L Street, N.W., Washington, D.C. 20005 | ) | CIVIL ACTION NO. _____ |
| | ) | |
| Plaintiff, | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| v. | ) | |
| | ) | |
| VARIOUS JOHN DOES 1-18, and XYZ | ) | |
| COMPANIES NOS. 1-18. | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

As its Complaint in this action, Plaintiff American Petroleum Institute ("API" or "Plaintiff"), by its undersigned attorneys, alleges as follows, upon actual knowledge with respect to itself and its own acts, and upon information and belief as to all other matters:

## NATURE OF THE CASE

1.     This is an action for copyright infringement brought under the Copyright Laws of the United States, 17 U.S.C. § 101 *et seq*., trademark infringement and unfair competition brought under the Lanham Act, 15 U.S.C. § 1051 *et seq*., and common law trademark infringement and unfair competition.

2.     Plaintiff API brings this action because Defendants, individually and in association with each other and/or third parties, have willfully infringed API's copyrights by copying, publicly displaying, and distributing API's Standards without authorization, and have willfully infringed the trademarks of API.

## JURISDICTION AND VENUE

3.      Jurisdiction is predicated upon 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a) and (b).

4.      This Court has supplemental jurisdiction over the claims in this Complaint, which arise under the common law of the District of Columbia pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative fact.

5.      Defendants are subject to the Court's jurisdiction because they do business in the District of Columbia and have committed the acts complained of herein in this District. Moreover, Defendants knew or should have known that API would particularly feel injury in this District as API is located in this district.

6.      API's claims arise in whole or in part in this District, and Defendants operate and/or transact business in this District and can be found in this District and knew or should have known that API would particularly feel injury in this District as API is located in this District. Accordingly, venue is proper under 28 U.S.C. § 1391(b) and (c) and § 1400(a).  Additionally, one or more of the Defendants are non-citizens of the United States, and thus venue is proper under 28 U.S.C. § 1391(d).

## THE PARTIES

7.      Plaintiff API is a District of Columbia corporation, with a business address at 1220 L Street, N.W., Washington, D.C. 20005. API is the nation's leading trade association for the petroleum and natural gas industry.

8.      Defendants John Does 1-18 and XYZ Companies ("Defendants") are various actors responsible for systematic reproduction, copying, and public display of API's copyrighted works on various websites, including websites that currently and/or in the past have connected

with the following domain names:  ansistandard-down.com; code-download.com; code-standard.com; engineerstandard.org; originalstandards.org; documentsale.org; standardsdoc.org; toolsbooks.com; ebookscode.com; standardsbox.com; cheappdfstandard.com; codestandardbest.com; documentmalls.org; codemalls.org; engineerdocuments.org; fileshops.org; standardcenter.org; and standardsreports.com (the "Infringing Websites").  The identities of Defendants are currently unknown to API because Defendants provide no contact information on the Infringing Websites, and the domain name registration information provide in the WHOIS database is false for the reasons discussed in Paragraphs 31-35.  However, on information and belief, Defendants are present and doing business in the District of Columbia, are transacting and doing business in this Judicial District and have committed the acts complained of herein in this Judicial District.

## API AND ITS COPYRIGHTED WORKS AND TRADEMARKS

9.      API is the leading trade association for the petroleum and natural gas industry in the U.S. API was established to afford a means of cooperation between the industry and the government in all matters of national concern, foster foreign and domestic trade in American petroleum products, promote the interests of the petroleum industry, and promote the improvement of its members and the study of the arts and sciences connected with the oil and gas industry.

10.     For more than ninety years, API has used the trademarks and trade names API and AMERICAN PETROLEUM INSTITUTE for a wide variety of products and services aimed at the promotion, development, and improvement of the petroleum and natural gas industry.  The marks and names AMERICAN PETROLEUM INSTITUTE and API have been synonymous

during this time.  API's services include, among other things, the development and publication of standards, specifications, and recommended practices for the petroleum and natural gas industry.

11.     Since 1924, API has been a cornerstone in establishing and maintaining standards for the worldwide oil and natural gas industry. API's standards incorporate industry practices designed to increase quality, reliability, and interchangeability; improve safety for industry personnel; and promote global industry standardization.

12.     API develops and publishes standards, specifications, and recommended practices to assist businesses in the use of safe, interchangeable parts, the production of quality products, and the adoption of safe-operations practices in the petroleum and natural gas industry.  Each API standard, specification, technical reports, and recommended practice is published in a booklet that prominently bears the API mark ("API's Standards").  Currently, API has published more than 600 different standards, specifications, technical reports, and recommended practices, relating to all facets of the petroleum and natural gas industry, including, but not limited to (a) upstream industries (petroleum exploration and production); (b) downstream industries (petroleum refining and processing); (c) petroleum pipelines; (d) marine transportation; and (d) natural gas operations.

13.     API's Standards and recommended practices are well known in the petroleum industry and are often adopted by or incorporated into federal regulations applicable to the petroleum industry.

14.     API operates a web site located at www.api.org, which provides information about its publications as well as its various standards, specifications, and recommended practices. API has operated the www.api.org website since early 1995.

15.     Authorized copies of API's Standards are available in hard copy form, on CDROM, and as write-protected PDF files available for single-user download.  The write-protected PDF files may not be electronically duplicated or transferred to another user, and print rights are limited to one printed copy.  They are not available as unlocked, non-write protected PDF files, as they are offered on some of the infringing websites.  Only the following distributors are permitted to sell authorized copies of API Standards: Information Handling Services (IHS); Techstreet; SAI Global; BSB Edge (India and Middle East); Beuth Verlag GmbH (Germany), Afnor Editions (France); and Brazilian Association of Technical Standards (Brazil) (the "Authorized Distributors").

16.     API also provides customizable subscriptions to customers who require broader access to standards.  No subscription provides the right to distribute, sell, or reproduce the Standards.  All subscriptions are limited to the subscribing party.  On information and belief, none of the Defendants in this case has a valid subscription.

17.     Sales of API's Standards provide significant revenue to API. API's Standards may sell for several hundred dollars per single authorized copy.  Because API's Standards are designed to be used together, a company or organization purchasing API's Standards will often purchase several standards at once in a customizable subscription, with a single sale totaling thousands of dollars. In 2013, API's sales of authorized copies of API's Standards totaled more than $12 million.  The sale of authorized copies of API's Standards is a significant source of revenue for API.

18.     Sales revenues from API's Standards support ongoing standards development. API incurs ongoing costs in supporting committees in continuous improvement of each of API's 600 publications. API's written Procedures for Standards Development require a review of each

Standard every five years. API relies on revenue generated by the commercial distribution of API's Standards to finance these activities.

19.    API owns the copyrights for API's Standards, and has registered or applied to register the API Standards with the U.S. Copyright Office, including for the following:

| Title of Work | Copyright Reg. No. | Reg. Date | Abbr. |
|---|---|---|---|
| API 570, Piping Inspection Code: In-service Inspection, Rating, Repair, and Alteration of Piping Systems - Third Edition, November 2009 | TX 7-015-782 | 11/20/2009 | 570 |
| API Standard 1104 Wielding of Pipelines and Related Facilities - Twentieth Edition, October 2005 | TX 6-447-216 | 07/24/2006 | 1104 |
| 17Q, Subsea Equipment Qualification - Standardized Process for Documentation - First Edition. | TX 7-269-319 | 06/23/2010 | 17Q |
| API Specification 6D, Specification for Pipeline Valves - Twenty-Third Edition, April 2008 | TX 7-217-366 | 06/20/2008 | 6D |
| API Standard 676, Third Edition - November 2009 | TX 7-836-515 | 11/30/2009 | 676 |
| API Standard 599, Metal Plug Valves-Flanged, Threaded, and Welding Ends - Seventh Edition | TX 7-834-009 | 02/05/2014 | 599 |
| ANSI/API Specification 6A, Specification for Wellhead and Christmas Tree Equipment - Twentieth Edition, October 2010 | TX 7-353-632 | 12/29/2010 | 6A |
| ANSI/API Specification 6DSS, Specification on Subsea Pipeline Valves, ISO 14723:2001, Petroleum and natural gas industries-Pipeline transportation systems-Subsea pipeline valves, 1st Edition, June 2007 | TX 6-818-871 | 08/17/2007 | 6DSS |
| API Standard 650, Welded Tanks for Oil Storage - Twelfth Edition, March 2013 | Filed Copyright Registration Case # 1-1368423261 | Filing Date 04/17/2014 | 650 |
| API Standard 610, Centrifugal Pumps for Petroleum, Petrochemical, and Natural Gas Industries - Eleventh Edition, September 2010 | Filed Copyright Registration Case# 1-1351158472 | Filing Date 04/10/2014 | 610 |
| API Standard 526, Flanged Steel Pressure-Relief Valves - Sixth Edition, April 2009 | TX 7-017-632 | 06/4/2009 | 526 |
| API Standard 653, Tank Inspection, Repair, Alteration, and Reconstruction - Fourth Edition, April 2009 | TX 7-017-638 | 06/04/2009 | 653 |

| API Standard 620, Design and Construction of Large, Welded, Low-pressure Storage Tanks - Eleventh Edition 2008 | Filed Copyright Registration Case # 1-1699862571 | Filing Date 08/27/2014 | 620 |
|---|---|---|---|
| API Bulletin 2V, Design of Flat Plate Structures - Third Edition, June 2004 | Filed Copyright Registration Case# 1-1699965110 | Filing Date 08/27/2014 | 2V |

Copies of the certificates of registrations or receipts for the registration applications listed above are attached as Exhibit A.

20.     Each of API's Standards, including those listed in Paragraph 19 of this Complaint, are API's original works of authorship and constitute copyrightable subject matter under the copyright laws of the United States.

21.     API is the owner of a number federal trademark registrations for its API and API-formative marks ("API Marks") in the petroleum and natural gas industry including the following:

| Mark | Reg. No. | Goods and Services |
|---|---|---|
| API | 679642 | Publications relating to testing methods, specifications and standards in the petroleum industry and in the field of supply for the petroleum industry |
| **API** ("API Logo") | 3285891 | A wide variety of goods and services, including:<br><br>Electronic publications, namely, standards newsletters, brochures, catalogs, and guides in the form of CDROMs, all relating to the petroleum industry;<br><br>Publications, namely, standards, newsletters, brochures, catalogs, guides, and books, all relating to the petroleum industry;<br><br>Educational services, namely, conducting training classes, seminars and conferences concerning the petroleum industry;<br><br>Providing quality assurance services in the field of petroleum products; petroleum drilling products, and petroleum refining products; development of voluntary standards for the petroleum industry; providing technology information concerning the petroleum, petrochemical, and energy industries via a global computer network. |

| | | |
|---|---|---|
| *energy* **API** <br><br> ("ENERGY API Logo") | 3617681 | A wide variety of goods and services, including: <br><br> Electronic publications, namely, standards newsletters, brochures, catalogs, and guides in the form of CDROMs, all relating to the petroleum industry; <br><br> Publications, namely, standards, newsletters, brochures, catalogs, guides, and books, all relating to the petroleum industry; <br><br> Educational services, namely, conducting training classes, seminars and conferences concerning the petroleum industry;. <br><br> Providing quality assurance services in the field of petroleum products; petroleum drilling products, and petroleum refining products; development of voluntary standards for the petroleum industry; providing technology information concerning the petroleum, petrochemical, and energy industries via a global computer network. |
| **AΡ** <br><br> ("API Design") | 677359 | Technical publications and information bulletins issued from time to time. |

Copies of the registrations listed above are attached as Exhibit B.

22.      Pursuant to 15 U.S.C. §1115(a), API's federal trademark registrations listed above

constitute prima facie evidence of API's exclusive nationwide ownership of those registered

marks.  Moreover, Registration Nos. 679,642 and 677,359 have become incontestable and thus

constitute conclusive evidence of API's exclusive right to those marks.

23.      API has extensively advertised its API Marks and its services and products

offered under those marks over the years in periodicals, on the Internet, and at conferences and

other events.  By virtue of these activities, the API Marks have long been famous in the

petroleum and natural gas industry and are enormously valuable assets of API.

## DEFENDANTS' INFRINGING ACTIVITIES

24.     Despite not being Authorized Distributors of API's Standards, Defendants have displayed, distributed, made available for sale, and/or sold on numerous websites, including the Infringing Websites, unauthorized copies of hundreds of API's Standards, including the works listed in Paragraph 19.

25.     During its investigation of the Infringing Websites, API's representatives located in the District of Columbia purchased copies of the works listed in Paragraph 19 from Defendants through the Infringing Websites using U.S. currency.  The first and last pages of the purchased infringing copies of API's Standards and pages showing the purchase are attached as Exhibit C.

26.     The works purchased from Defendants through the Infringing Websites are PDF files that were downloaded to computers located in the District of Columbia.

27.     PDF versions of API's standards are only available for legitimate purchase through API or API's Authorized Distributors.  As detailed in Paragraph 15, these PDF files may not be electronically duplicated or transferred to another user.   Therefore, any PDF versions of API's standards not purchased from Authorized Distributors, such as those purchased by API's investigators through the Infringing Websites, are unauthorized, infringing copies.

28.     The sale price for the copies of API's Standards that Defendants sold through the Infringing Websites is significantly lower than the price at which API offers API's Standards.  For example, an authorized copy of API Standard 676 costs $150.00, but is offered on one of the Infringing Websites for $24.00.  Exhibit D.  In any event, the money that the Defendants' collect for the sale of their infringing copies of API's Standards does not go to API.

29.     In connection with their display, offering for sale, and/or sale of unauthorized copies of API's Standards, Defendants often display API's Marks on the Infringing Websites, including the API Logo, the ENERGY API Logo, and the API Design, without API's permission.  API's Marks, including the API Logo, the ENERGY API Logo, and the API Design, also appear on Defendants' infringing copies of API's Standards.

30.     Upon learning of the display and sale of API Standards on the Infringing Websites, API has made every effort to contact Defendants or the Internet Service Providers ("ISPs") for the Infringing Websites to request that these infringing copies of API Standards be removed from the websites in accordance with the Digital Millennium Copyright Act ("DMCA").

31.     API's efforts to obtain prompt relief under the DMCA has been unsuccessful with respect to the Infringing Websites because Defendants have ignored any DMCA requests that they received through e-mail and/or have taken efforts to conceal their identities to avoid having API contact them or take any actions to stop their infringing activities.

32.     Defendants go to great lengths to conceal their identities, using false names and/or addresses to register the Infringing Websites.  Because the Infringing Websites contain no contact information other than an email address with which to communicate with customers, the identities of the operators are unknown to API.

33.     The registration information for the domain names associated with the Infringing Websites is as follows:

| Domain name | Registrant Name | Address | Email | Phone |
|---|---|---|---|---|
| Ansistandard-down.com | zhangneng | Changtuqichezhan, Beijing, China, 21568 | gougougou@gmail.com | 86.13869785489 |
| Code-download.com | zhangneng | Changtuqichezhan, Beijing, China, 21568 | gougougou@gmail.com | 86.13869785489 |

| Code-standard.com | zhangneng | Changtuqichezhan, Beijing, China, 21568 | gougougou@gmail.com | 86.13869785489 |
|---|---|---|---|---|
| Engineerstandard.org | FrancoRieffe lluyeyeye | Shanghai, Miami, AZ 16038 | ericddock@gmail.com | 86.7562125583 |
| Originalstandards.org | Zhong Liner | fengzhongsi taixi 1006-6, Beijing, China 10010 | linerzh@gmail.com | 86.15589941036 |
| Standardsdoc.org | Weisong Huang | guang dongsheng shen zhen shi bao an qu qing nian lu 88 hao, Shenzhen, China, 518000 | lmeses@163.com | 86.01064242299 |
| Toolsbooks.com | vogue feathers | 67th Ave. SE Snohomish, WA 18810 | voguefeathers@gmail.com | 1.8177735193 |
| Ebookscode.com | vogue feathers | 67th Ave. SE Snohomish, WA 18810 | voguefeathers@gmail.com | 1.8177735193 |
| Standardsbox.com | Vogue feathers | 67th Ave. SE Snohomish, WA 18810 | voguefeathers@gmail.com | 1.8177735193 |
| Cheappdfstandard.com | Tony | ChangZhouShiLanLingBeiLu484Hao1HaoLou4Lou ChangZhouShi, China 213000 | 420699193@qq.com | 86.5198811711 |
| Codestandardbest.com | Tony | ChangZhouShiLanLingBeiLu484Hao1HaoLou4Lou ChangZhouShi, China 213000 | 420699193@qq.com | 86.5198811711 |
| Documentmalls.org | Lin zhiwei | jiushiqiaojie10hao Hefei, China 230000 | Alice19831001@hotmail.com | 86.05515657865 |
| Engineerdocuments.org | Lin zhiwei | jiushiqiaojie10hao Hefei, China  230000 | Alice19831001@hotmail.com | 86.05515657865 |
| Fileshops.org | Lin yu | xinanlu23hao Changsha, China 410000 | Standardstore@hotmail.com | 86.01081432432 |
| Standardcenter.org | wu li | beijingxichengqu168hao Beijing, China 100000 | zappos@qq.com | 86.15959012354 |
| Standardsreports.com | Ji xiangpeng | langmaoshan5qu10haolou3dan yuan302 Jinan, China 250012 | kkdren@gmail.com | 86.13455160879 |
| Codemalls.org | chen wu | beijingshizhongguancunlu309hao Beijing, China 100000 | Perez9795@hotmail.com | 86.01051313689 |
| Documentsale.org | Lin zhi | fuxinglu130hao Lanzhou, China 730000 | Standardshop@hotmail.com | 86.0102563254 |

34.     Of the addresses and phone numbers that API has investigated for the Infringing Websites, each has turned out to be false or inaccurate.  Moreover, some of the addresses are clearly false on their face, e.g. Shanghai, Miami AZ 16038.

35.     Some of the domain names linked to the Infringing Websites share the same registrant contact information, as shown in the chart in Paragraph 33.

36.     Several of the domain names linked to the Infringing Websites redirect to other infringing sites.  Standardsbox.com and toolsbooks.com redirect to the Infringing Website ebookscode.com.  Fileshops.org redirects to codespdf.org; cheappdfstandard.com redirects to codestandardbest.com; and documentmalls.org redirects to codemalls.org.

37.     Some of the URLs to purchase the works are similar for the Infringing Websites, merely substituting one domain name for another in the URL, e.g.:

> http://www.ansistandard-down.com/api-c-200120.html
> http://www.code-download.com/api-c-200120.html
> http://www.code-standard.com/api-c-200120.html
> http://www.engineerstandard.org/api-c-200120.html
> http://cheappdfstandard.com/api-c-200120.html
> http://www.codestandardbest.com/api-c-200120.html
> http://www.ebookscode.com/api-c-2.html
> http://www.standardsdoc.org/api-c-5.html

38.     The fact that some of the Infringing Websites use similar URLs to identify the same works across multiple websites and/or share the same contact information indicates that at least some of these Infringing Websites are part of a coordinated effort to sell unauthorized API Standards.

39.     Some of Defendants' Infringing Websites are registered through various domain name registrars in the United States, including Domainstreetdirect.com; GoDaddy.com; Name.com, Inc.; PEG Tech Inc.; and Publicdomainregistry.com.  Exhibit E.

40.     Some of Defendants' Infringing Websites are hosted in the United States by various ISPs, including Confluence Networks, Inc.; DirectSpace Networks, LLC; Google Inc.; PEG Tech Inc.; Peer 1 Network; VegasNAP LLC; and WholeSale Internet, Inc.

41.     Some of Defendants' Infringing Websites connect to Paypal.com and/or Visa to allow users to complete their purchase transactions.

42.     At the time of the filing this Complaint, the domain name for some of the Infringing Websites had expired or was no longer operational.  However, in the past, each of these websites displayed, distributed, made available for sale, and/or sold infringing copies of API's Standards, and/or displayed API's Marks.  Exhibit E.

### INJURY TO API AND THE PUBLIC

43.     API is informed and believes, and on that basis alleges, that unless enjoined by this Court, Defendants intend to continue their course of wrongful conduct and to continue to reproduce, distribute, publicly display, infringe upon, sell, and otherwise profit from API's Standards.  As a direct and proximate result of Defendants' wrongful acts, API has already suffered irreparable injury and monetary damages in an undetermined amount.

44.     Defendants' unauthorized use of API's Marks has irreparably injured and, if permitted to continue, will further irreparably injure API, its marks, and the goodwill associated with its marks.

45.     Defendants' actions described above are likely to cause confusion, mistake, or deception as to the source or origin of Defendants' goods or services; are likely to falsely suggest connection, sponsorship, license, approval, and/or association of Defendant and Defendants' goods and services with API.

46.     API has no adequate remedy at law.

## FIRST CLAIM FOR RELIEF
## DIRECT WILLFUL COPYRIGHT INFRINGEMENT - REPRODUCTION
## 17 U.S.C. § 101 *et seq.*

47.     API repeats and realleges each and every allegation set forth in Paragraphs 1 through 46.

48.     API's Standards are original works of authorship subject to copyright protection under 17 U.S.C. § 101 *et seq.*

49.     API's Standards were subject to copyright protection under 17 U.S.C. § 102 (a) when they were fixed by API in a tangible format.

50.     API owns all right, title, and interest, including copyright to API's Standards and has the authority to enforce all such rights, including copyright.

51.     API owns copyright registrations and/or applications for registrations covering API's Standards including those, for example, listed in Paragraph 19 of this Complaint.

52.     Defendants had access to API's Standards.

53.     Defendants never sought nor obtained API's permission to reproduce API's Standards.

54.     Without authority or permission, Defendants reproduced API's Standards and continue to reproduce API's Standards without the permission of API.

55.     By the actions alleged above, Defendants, individually or jointly, have infringed and will continue to infringe API's copyrights in and relating to API's Standards by reproducing, without API's authorization, API's Standards, in violation of 17 U.S.C. §§ 106(1) and 501.

56.     The actions of Defendants described above have at all times relevant to this action been willful and/or knowing.

57.     As a direct and proximate result of Defendants' infringement of API's copyrights, API is entitled to the maximum statutory damages pursuant to 17 U.S.C. §504(c).  Alternatively, at API's election, pursuant to 17 U.S.C. § 504(b), API's shall be entitled to its actual damages plus Defendants' profits from infringement as will be proven at trial. API is also entitled to its costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

58.     API has no adequate remedy at law.  Defendants' conduct has caused, and, if not enjoined will continue to cause, irreparable harm to API. As a result of Defendants' wrongful conduct, API is entitled to injunctive relief and damages.

**SECOND CLAIM FOR RELIEF**
**DIRECT WILLFUL COPYRIGHT INFRINGEMENT - DISTRIBUTION**
**17 U.S.C. § 101 *et seq.***

59.     API repeats and realleges each and every allegation set forth in Paragraphs 1 through 59.

60.     API's Standards are original works of authorship subject to copyright protection under 17 U.S.C. § 101 *et seq*.

61.     API's Standards were subject to copyright protection under 17 U.S.C. § 102 (a) when they were fixed by API in a tangible format.

62.     API owns all right, title, and interest, including copyright to API's Standards and has the authority to enforce all such rights, including copyright.

63.     API owns copyright registrations and/or applications for registrations covering API'S Standards including those, for example, listed in Paragraph 19 of this Complaint.

64.     Defendants had access to API's Standards.

65.     Defendants never sought nor obtained API's permission to publicly distribute API's Standards.

66.     Without authority or permission, Defendants reproduced API's and continue to publicly distribute API's Standards without the permission of API.

67.     By the actions alleged above, Defendants, individually or jointly, have infringed and will continue to infringe API's copyrights in and relating to API's Standards by publicly distributing, without API's authorization, API's Standards, in violation of 17 U.S.C. §§ 106(3) and 501.

68.     The actions of Defendants described above have at all times relevant to this action been willful and/or knowing.

69.     As a direct and proximate result of Defendants' infringement of API's copyrights, API is entitled to the maximum statutory damages pursuant to 17 U.S.C. §504(c).  Alternatively, at API's election, pursuant to 17 U.S.C. § 504(b), API's shall be entitled to its actual damages plus Defendants' profits from infringement as will be proven at trial. API is also entitled to its costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

70.     API has no adequate remedy at law. Defendants' conduct has caused, and, if not enjoined will continue to cause, irreparable harm to API.  As a result of Defendants' wrongful conduct, API is entitled to injunctive relief and damages.

### THIRD CLAIM FOR RELIEF
### DIRECT WILLFUL COPYRIGHT INFRINGEMENT - PUBLIC DISPLAY
### 17 U.S.C. § 101 *et seq.*

71.     API repeats and realleges each and every allegation set forth in Paragraphs 1 through 72.

72.     API's Standards are original works of authorship subject to copyright protection under 17 U.S.C. § 101 *et seq.*

73.     API's Standards were subject to copyright protection under 17 U.S.C. § 102(a) when it was fixed by API in a tangible format.

74.     API owns all right, title, and interest, including copyright to API's Standards and has the authority to enforce all such rights, including copyright.

75.     API owns copyright registrations and/or applications for registrations covering API'S Standards including those, for example, listed in Paragraph 19 of this Complaint.

76.     Defendants had access to API's Standards.

77.     Defendants never sought nor obtained API's permission to publicly display API's Standards.

78.     Without authority or permission, Defendants reproduced API's and continue to publicly display API's Standards without the permission of API.

79.     By the actions alleged above, Defendants, individually or jointly, have infringed and will continue to infringe API's copyrights in and relating to API's Standards by publicly displaying, without API's authorization, API's Standards, in violation of 17 U.S.C. §§ 106(5) and 501.

80.     The actions of Defendants described above have at all times relevant to this action been willful and/or knowing.

81.     As a direct and proximate result of Defendants' infringement of API's copyrights, API is entitled to the maximum statutory damages pursuant to 17 U.S.C. §504(c).  Alternatively, at API's election, pursuant to 17 U.S.C. § 504(b), API's shall be entitled to its actual damages plus Defendants' profits from infringement as will be proven at trial. API is also entitled to its costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

82.     API has no adequate remedy at law. Defendants' conduct has caused, and, if not enjoined will continue to cause, irreparable harm to API.  As a result of Defendants' wrongful conduct, API is entitled to injunctive relief and damages.

**FOURTH CLAIM FOR RELIEF**
**WILLFUL CONTRIBUTORY COPYRIGHT INFRINGEMENT**
**17 U.S.C. § 101 et seq.**

83.     API repeats and realleges each and every allegation set forth in Paragraphs 1 through 85.

84.     As a result of Defendants' unauthorized actions with respect to the API Standards, unauthorized users have accessed and infringed API's rights in and to its registered copyrighted in the API Standards, by reproducing, using, displaying, and distributing the API Standards, all without API's authorization.  As a consequence, such unauthorized users are therefore directly infringing API's exclusive rights of reproduction, adaption, distribution, and public display under 17 U.S.C. §§ 106(1), 106(2), 106(3), and 106(5), respectively.

85.     Defendants contribute to this direct copyright infringement by selling or otherwise distributing the API Standards that permit, contribute to, and encourage the infringement.

86.     Defendants are liable as a contributory copyright infringer for the infringing acts of the unauthorized users.  Defendants enable, induce, facilitate, and materially contribute to each act of infringement by such unauthorized users.

87.     Defendants have actual and constructive knowledge that unauthorized users are among other things, using, reproducing, distributing, and displaying API's registered copyrighted API Standards and/or creating derivative works, all without authorization.

88.     Acting with this actual and constructive knowledge, Defendants enable, facilitate, and materially contribute to the copyright infringement by unauthorized users, which could not occur without Defendants' enablement.

89.     As a direct and proximate result of the actions of Defendants' alleged above, the API has been irreparably injured and has suffered monetary damages in an as yet undetermined amount.

**FIFTH CLAIM FOR RELIEF**
**TRADEMARK COUNTERFEITING UNDER**
**SECTIONS 32(a) AND 34(d) OF THE LANHAM ACT**
**15 U.S.C. §§ 1114(a) AND 1116 (d)**

90.     API repeats and realleges each and every allegation set forth in Paragraphs 1 through 92.

91.     Defendants have used and continue to use counterfeits of API's federally registered API Marks in connection with the sale, offering for sale, and distribution of goods and services identical to those covered by API's registrations for the API Marks, in violation of Sections 32(1)(a) and 34(d) of the Lanham Act, 15 U.S.C. §§ 1114(1)(a), 1116(d).

92.     Defendants' willful and deliberate actions constitute counterfeiting of API's federally registered marks, in violation of Sections 32(a), and 34(d) of the Lanham Act, 15 U.S.C. §§ 1114(a), 1116(d), and 1127, and cause damage to API.

**SIXTH CLAIM FOR RELIEF**
**TRADEMARK INFRINGEMENT UNDER**
**SECTION 32(1) OF THE LANHAM ACT**
**15 U.S.C. § 1114 (1)**

93.     API repeats and realleges each and every allegation set forth in Paragraphs 1 through 95.

94.     Defendants' actions described above have caused, and are likely to cause, confusion, mistake, or deception of the public as to the source, certification, sponsorship, and/or approval of Defendants' goods and/or services.

95.     Defendants' willful and deliberate actions constitute willful infringement of each of API's federally registered marks listed in Paragraph 21 of this Complaint, in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

**SEVENTH CLAIM FOR RELIEF
UNFAIR COMPETITION UNDER
SECTION 43(A)(1)(A) OF THE LANHAM ACT
15 U.S.C. § 1125 (a)(1)(A)**

96.     API repeats and realleges each and every allegation set forth in Paragraphs 1 through 98.

97.     The aforesaid willful and deliberate acts of Defendants are likely to cause confusion, mistake, or deception as to the certification, origin, sponsorship, and/or approval of Defendants' goods and/or services with API, and thus constitute false designations of origin and unfair competition in violation of Section 43(a)(1)(A) of the Trademark Act of 1946, as amended, 15 U.S.C. § 1125(a)(1)(A).

**EIGHTH CLAIM FOR RELIEF
TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION
UNDER COMMON LAW**

98.     API repeats and realleges each and every allegation set forth in Paragraphs 1 through 100.

99.     The aforesaid acts of Defendants constitute trademark infringement and unfair competition in the District of Columbia and other states where Defendants' offer, sell, distribute, and/or advertise their goods, including this District, thereby causing a likelihood of confusion in

violation of the common law of the District of Columbia, and laws of other states, by reason of

which API has suffered, and will continue to suffer, irreparable and pecuniary injury.

## JURY TRIAL DEMAND

100.    Pursuant to Rule 38 of the Federal Rules of Civil Procedure, API hereby demands

a trial by jury on any issue triable of right by a jury.

## PRAYER FOR RELIEF

WHEREFORE, API prays that this Court enter judgment in its favor on each and every

claim for relief set forth above and award it relief including, but not limited to, the following:

A.      An Order holding Defendants liable for willful copyright infringement;

B.      An Order directing Defendants to destroy all copies of API's Standards in their

possession, custody, or control, whether hard-copy or electronic;

C.      An Order permanently enjoining Defendants and all persons and/or entities in

active concert or participation with them from copying and/distributing API's Standards in any

manner, via any platform, using any technology;

D.      An Order requiring Defendants to disclose the number of copies of API's

Standards they made and/or distributed in any form by sale or otherwise, and the identity of each

recipient;

E.      An Order requiring Defendants to disclose the third-party source, if any, of any

unauthorized copies of API's Standards;

F.      A permanent injunction enjoining Defendants, their officers, directors, employees,

agents, subsidiaries, related companies, representatives, distributors, dealers, and all persons in

active concert or participation with any of them from using in any form or manner any of API's

Marks, including but not limited to those listed in Paragraph 19, and any confusingly similar or dilutive marks or names;

G.    A permanent injunction enjoining Defendants, their officers, directors, employees, agents, subsidiaries, representatives, distributors, dealers, and all persons in active concert or participation with any of them, from taking any actions that falsely suggest that Defendants and/or Defendants' products or services are sponsored, licensed, or approved by API;

H.    An Order awarding API monetary relief including damages sustained by API in an amount not yet determined pursuant to 17 U.S.C. § 1117(a)-(b) and 17 U.S.C. §504;

I.    An Order awarding Defendants' profits pursuant to 17 U.S.C. § 1117(a)-(b) and 17 U.S.C. §504;

J.    An Order requiring each Defendant to pay statutory damages in accordance with 15 U.S.C. § 1117(c)(1) of no less than $1,000 nor more than $200,000 per type of product or service sold, offered for sale, or distributed;

K.    An Order requiring each Defendant to pay statutory damages in accordance with 15 U.S.C. § 1117(c)(2) of $2,000,000 per counterfeit mark per type of product or service sold, offered for sale, or distributed;

L.    An Order requiring Defendants to account for and pay to the API all profits arising from Defendants' unlawful acts;

M.    An Order directing Defendants to pay API damages, including but not limited to direct, consequential, indirect, compensatory, punitive damages, and/or statutory damages, including enhanced statutory damages for willful copyright infringement;

N.    An Order awarding API treble damages pursuant to 15 U.S.C. § 1117.

O.      An Order awarding API its attorneys' fees and costs in this action pursuant to 15

U.S.C. § 1117, 17 U.S.C. § 505, and other applicable laws;

P.      An Order allowing for email service on the Defendants;

Q.      Awarding such other relief as this Court may deem appropriate.


Dated: October 17, 2014                     Respectfully submitted,

                                    By: */s/ B. Brett Heavner*
                                        B. Brett Heavner (D.C Bar No. 437337)
                                        b.brett.heavner@finnegan.com
                                        Brian R. Westley (D.C. Bar No. 1015727)
                                        brian.westley@finnegan.com
                                        FINNEGAN, HENDERSON, FARABOW,
                                         GARRETT & DUNNER, L.L.P.
                                        901 New York Avenue, N.W.
                                        Washington, DC 20001
                                        Telephone: (202) 408-4000
                                        Facsimile:  (202) 408-4400

                                        *Counsel for Plaintiff American*
                                        *Petroleum Institute*

8940891_1.DOCX